**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

CARLOS ZELAYA, et al.,                          :

        Plaintiff,                          :

   -against-                          :    CIVIL ACTION NO.  08 cv 2933 (LMM)

MADISON SQUARE GARDEN, L.P., et. al,            :

       Defendant.                          :

------------------------------------- X


### MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT CABLEVISION SYSTEMS CORPORATION TO DISMISS PLAINTIFFS' COMPLAINT

Michael S. Sommer
MS-2727
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY  10173-1922
Telephone:  (212) 547-5000
Facsimile:  (212) 547-5400

Bobby R. Burchfield (*pro hac vice* pending)
Richard W. Smith (*pro hac vice* pending)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 756-8000
Facsimile: (202) 756-8087

Attorneys for Defendant Cablevision Systems
Corporation

June 2, 2008

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE ................................................................................1

STANDARD GOVERNING MOTIONS TO DISMISS .................................................3

ARGUMENT ..............................................................................................................4

I.    THE COMPLAINT FAILS TO ALLEGE THAT CABLEVISION ENGAGED
      IN DIRECT ACTION. ......................................................................................4

II.   THE COMPLAINT FAILS TO ALLEGE A BASIS FOR HOLDING
      CABLEVISION DERIVATIVELY LIABLE FOR THE ACTS OF MSG. ..........6

CONCLUSION ..........................................................................................................7

WDC99 1573518-1.082528.0011

# TABLE OF AUTHORITIES

## CASES

*Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384 (S.D.N.Y. 2007) ................................. 3

*ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................ 4

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ................................................................... 4

*Darden v. DaimlerChrysler N.A. Holding Corp.*, 191 F. Supp. 2d 382 (S.D.N.Y. 2002) ............................................................................................................................................. 7

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265 (S.D.N.Y. 2004) ............................................................................................................................................. 8

*Filiberto v. Herk's Tavern*, 686 N.Y.S.2d 886 (N.Y. App. Div. 1999) ...................................... 6

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.1994) ............................... 4

*Joly v. Northway Motor Car Corp.*, 517 N.Y.S. 2d 595 (N.Y. App. Div. 1987) ........................ 5

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) .................................................... 7

*Mobil Oil Corp. v. Linnear Films, Inc.*, 718 F. Supp. 260 (D. Del. 1989) ................................. 7

*O'Mahony v. Accenture, Ltd.*, 537 F. Supp. 2d 506 (S.D.N.Y. 2008) ........................................ 4

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ......................................... 3

*Prince v. Cablevision Systems Corp.*, 2005 WL 1060373, Civ. No. 04-8151 (S.D.N.Y. May 6, 2005) ........................................................................................................ 1, 3, 7

*William Wrigley, Jr. Co. v. Waters*, 890 F.2d 594 (2d Cir. 1989) ............................................. 6

## STATUTES & RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 3

N.Y. General Obligations Law § 11-101 (McKinney 2008) ........................................................ 3

A defendant may not be liable for injuries caused to a plaintiff unless the defendant took some direct action that caused the injury, or is derivatively responsible for direct actions taken by others. Here, plaintiffs seek to hold defendant Cablevision Systems Corporation ("Cablevision") liable for their injuries merely because Cablevision is the ultimate parent of Madison Square Garden, L.P. ("MSG"), a limited partnership that owns and operates Madison Square Garden.

Plaintiffs fail to allege that Cablevision took any direct action that caused them injury. Rather, all relevant actions were allegedly undertaken by MSG, an indirect Cablevision subsidiary. Further, Plaintiffs fail to allege any facts upon which derivative liability could be founded. In similar circumstances, this Court has previously held that Cablevision is not liable for the acts of MSG. *See Prince v. Cablevision Systems Corp.*, 2005 WL 1060373, Civ. No. 04-8151 (S.D.N.Y. May 6, 2005) (Sweet, J.) (dismissing claims against Cablevision *with prejudice* because complaint failed to justify attributing MSG's alleged conduct to Cablevision). Likewise, Cablevision must be dismissed from this case.

Cablevision also joins MSG's separate motion to dismiss with prejudice the common law claims contained in counts IV (wrongful death), V (survivorship), and VI (lost consortium), and to dismiss count I or strike the common law allegations therefrom.

## STATEMENT OF THE CASE

This case arises out of a tragic car accident caused by the reckless driving of defendant Kevin Freibott on January 23, 2007. According to the complaint, the allegations of which are taken as true for purposes of this motion, Mr. Freibott had been drinking in at least two locations earlier that night. (Compl. ¶¶ 21, 24.) It alleges that Mr. Freibott first visited Stitch Bar & Lounge ("Stitch"), where he was sold "multiple alcoholic beverages," including after he had

become visibly intoxicated.  (Compl. ¶¶ 21, 22.)  The complaint asserts that Mr. Freibott

allegedly attended a basketball game at Madison Square Garden at which he was served

additional alcoholic beverages after he had become visibly intoxicated.  (Compl. ¶¶ 23, 25.)

Following the game, Mr. Freibott allegedly drove his vehicle in a reckless manner and struck the

rear of the vehicle in which Carlos, Ruth, and Jose Zelaya were passengers, causing injuries to

Mr. and Mrs. Zelaya and the death of their son, Jose Carlo Zelaya.  (Compl. ¶ 27-30.)

     The complaint names as defendants four separate individuals and entities – Cablevision,

MSG, Stitch, and Mr. Freibott.  Madison Square Garden, L.P. is alleged to be a limited

partnership, organized under Delaware law.  (Compl. ¶ 7.)  Cablevision Systems Corp. is alleged

to be a corporation organized under Delaware law.  (Compl. ¶ 6 .)  Stitch is alleged to be New

York corporation, and Mr. Freibott is described as an individual resident of New Jersey.

(Compl. ¶¶ 9, 11.)

     Although the complaint names four defendants, it alleges that only the latter three did

anything that caused plaintiffs' harm.  MSG and Stitch are alleged to have sold alcoholic

beverages to Mr. Freibott, who in turn is alleged to have struck plaintiffs' vehicle.  (Compl. ¶¶

21, 22, 24, 25, 27.)  There are no allegations that Cablevision undertook any action at all.

Rather, the Complaint repeatedly incants "Cablevision, by and through its subsidiary MSG," in

an attempt to obscure the absence of any allegation of tortious conduct (or indeed any action at

all) by Cablevision. (*See, e.g.,* Compl. ¶ 8, 16, 39, 40.)  Count I alleges that Cablevision violated

the New York Dram Shop Act on the sole basis that its subsidiary MSG allegedly served

alcoholic beverages to Mr. Freibott.  (Compl. ¶ 33-34).  Likewise, counts IV, V, and VI assert

wrongful death, survivorship, and loss of services, society, and companionship claims against

Cablevision based on the same alleged conduct of MSG.  (Compl. ¶¶ 41, 79, 85, 89.)

- 2 -

Tellingly, the complaint does not – and cannot – allege that Cablevision holds a license to sell or sold Mr. Freibott any alcoholic beverages.[1] And it does not – and cannot – allege that Cablevision witnessed Mr. Freibott's visible intoxication. Nor does the complaint allege any facts upon which Cablevision could be held derivatively liable for the allegedly tortious acts of a separately constituted subsidiary. *See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007) (stating that complaint must "amplify a claim with some factual allegations ...."); *Prince v. Cablevision Systems Corp.*, 2005 WL 1060373, Civ. No. 04-8151 (S.D.N.Y. May 6, 2005) (dismissing complaint against Cablevision where plaintiff failed to make any allegations of action by Cablevision, and failed to provide any reason to disregard corporate separateness) (Attach. A). In short, the complaint fails to allege any basis for imposing liability on Cablevision.

In fact, although not necessary for purposes of this motion, the public record demonstrates that Madison Square Garden, L.P., is at least three corporate entities removed from Cablevision. MSG is an indirect subsidiary of Rainbow Media Holdings LLC, a Delaware limited liability company. *See* Schoenfeld Decl. at ¶ 6 & Exh. A. Rainbow Media Holdings is a subsidiary of CSC Holdings, Inc., a Delaware corporation that, in turn, is a subsidiary of Cablevision. *See id.* at ¶ 3, 5 & Exh. A. Plaintiffs do not even attempt to allege a basis for derivative liability through this corporate chain of separately constituted operating and holding companies.

## STANDARD GOVERNING MOTIONS TO DISMISS

---

[1] The public record demonstrates that Cablevision does not have a license to serve alcoholic beverages, and thus is not subject to the Dram Shop Act. *See* Schoenfeld Decl. at ¶ 13 & Exh. D (illustrating that no liquor licenses have been registered to Cablevision); *id.* at ¶ 3 & Exh. A (stating that Cablevision has no operations independent of its CSC Holdings subsidiary). A district court can rely on matters of public record in deciding a motion to dismiss. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

Under Rule 12(b)(6) a complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive dismissal, the plaintiff must provide grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)). The complaint must provide "plausible grounds" for the allegations with "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support them. *Twombly*, 127 S.Ct. at 1965. Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. *O'Mahony v. Accenture, Ltd.*, 537 F. Supp. 2d 506, 509 (S.D.N.Y. 2008) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994)).

## ARGUMENT

The claims against Cablevision are deficient in at least two respects. <u>First</u>, the complaint fails to allege that Cablevision engaged in any direct action. To be liable for a violation of the Dram Shop Act, and thus to be held liable for wrongful death, survivorship, or lost consortium claims, a defendant must have sold alcohol to a visibly intoxicated patron. *See N.Y. General Obligations Law § 11-101* (McKinney 2008). The complaint alleges only that Stitch and Madison Square Garden, L.P. sold alcohol to Mr. Freibott; it alleges no action by Cablevision.

<u>Second</u>, the complaint fails to allege any basis for derivative liability. A defendant may be derivatively liable for another's acts only in narrow circumstances, such as on an alter ego theory. No such circumstance is alleged, or present, here.

## I.    THE COMPLAINT FAILS TO ALLEGE THAT CABLEVISION ENGAGED IN DIRECT ACTION.

Absent allegations justifying derivative liability, a complaint that fails to allege action by a defendant fails to state a claim. *See Joly v. Northway Motor Car Corp.*, 517 N.Y.S. 2d 595, 596

- 4 -

(N.Y. App. Div. 1987) (dismissing tavern in Dram Shop action because plaintiff failed to allege direct sale of alcoholic beverage or derivative liability). Plaintiffs may not make general allegations about a single defendant's actions to "bootstrap" their way to liability against other, separate defendants.

Contrary to this established principle, plaintiffs assert Dram Shop liability against Cablevision merely because its separately constituted subsidiary, MSG, allegedly sold alcohol to Mr. Freibott while he was visibly intoxicated. (Compl. ¶ 39.) There are no allegations that Cablevision sold alcohol to Mr. Freibott, had the opportunity to witness Mr. Freibott's behavior, or indeed took any other independent action at all.

Notably, Cablevision could not be liable for violating New York's Dram Shop Act even if plaintiff could somehow allege that Cablevision engaged in direct action. The Dram Shop Act is inapplicable to an entity like Cablevision that does not hold a license to sell alcoholic beverages. *See Filiberto v. Herk's Tavern*, 686 N.Y.S.2d 886, 888 (N.Y. App. Div. 1999) (granting summary judgment to defendant diner, in part, because it did not hold a license to sell alcoholic beverages). Plaintiffs' complaint fails to allege that Cablevision holds such a license, alleging instead that "Cablevision, by and through its subsidiary MSG, was licensed" to sell alcoholic beverages. (Compl. ¶ 16.) Although artful, this is simply not enough. As the complaint itself admits, Cablevision and MSG are separate corporate entities. (Compl. ¶¶ 7, 8.)

Thus, plaintiffs' attempt to hold Cablevision directly liable based solely on the alleged actions of MSG fail. The claims against Cablevision must be dismissed with prejudice as a matter of law.

## II.    THE COMPLAINT FAILS TO ALLEGE A BASIS FOR HOLDING CABLEVISION DERIVATIVELY LIABLE FOR THE ACTS OF MSG.

Having failed to allege that Cablevision is directly liable for plaintiffs' injuries based on its own independent actions, plaintiffs' complaint does not even attempt to assert derivative liability based on MSG's actions. As the complaint itself admits, Cablevision and MSG are separate corporate entities. (Compl. ¶¶ 7, 8.) New York courts are loath to disregard corporate separateness in the absence of a clear and specific reason to do so. *William Wrigley, Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989). Indeed, courts strongly presume that legally distinct corporate entities are separate, and the liability of one is not easily reassigned to others. *Darden v. DaimlerChrysler N.A. Holding Corp.*, 191 F. Supp. 2d 382, 395 (S.D.N.Y. 2002) (dismissing claim where plaintiff failed to allege facts justifying treating two separate legal entities as one); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007) (identifying presumption of separateness given corporations).

Importantly, in unrelated litigation, Judge Sweet determined that Cablevision cannot be held liable for the alleged acts of MSG in the absence of specific allegations justifying derivative liability. *See Prince v. Cablevision Systems Corp.*, 2005 WL 1060373, Civ. No. 04-8151 (S.D.N.Y. May 6, 2005) (reviewing public corporate records and dismissing claims against Cablevision *with prejudice* because complaint failed to justify attributing MSG's conduct to Cablevision). Indeed, as previously indicated (p.3), the public record demonstrates that MSG is several corporate entities removed from Cablevision. Accordingly, before a claim for derivative liability could be made against Cablevision, plaintiffs would need to show a basis for disregarding not one or two, but at least <u>three</u> intermediate legal entities. The complaint provides no basis for doing so and there is none.

- 6 -

To state a viable claim against the parent corporation Cablevision based on the alleged actions of its indirect subsidiary MSG, plaintiffs must identify their derivative liability theory and make specific factual allegations justifying it. *See id.* (dismissing *with prejudice* Title VII claims against Cablevision brought by MSG employee who failed to allege specific facts justifying liability); *See Mobil Oil Corp. v. Linnear Films, Inc.*, 718 F. Supp. 260, 270 (D. Del. 1989) (granting defendant summary judgment because plaintiff failed to allege any viable theory of liability, and stating that "the party who wishes the court to disregard that form bears the burden of proving that there are substantial reasons for doing so."); *See also EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004) (finding that pure conclusory allegations will not suffice to state a claim based on veil-piercing or alter-ego liability, even under a liberal notice pleading standard.) Here, however, plaintiffs do not suggest any theory under which Cablevision could be liable for the alleged actions of MSG, much less allege any facts upon which any such theory could be grounded. Accordingly, the complaint against Cablevision must be dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Cablevision urges the Court to dismiss all claims against it with prejudice.

- 7 -

WDC99 1573518-1.082528.0011

June 2, 2008

Respectfully submitted,

Michael S. Sommer
MS-2727
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173-1922
Telephone: (212) 547-5000
Facsimile: (212) 547-5400

Bobby R. Burchfield (*pro hac vice* pending)
Richard W. Smith (*pro hac vice* pending)
MCDERMOTT WILL & EMERY LLP
600 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 756-8000
Facsimile: (202) 756-8087

Attorneys for Defendant Cablevision Systems
Corporation

- 8 -

# ATTACHMENT A

Westlaw.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 1

Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

**H**

Prince v. Cablevision Systems Corp.
S.D.N.Y.,2005.

United States District Court,S.D. New York.
Courtney PRINCE, Plaintiff,
v.
CABLEVISION SYSTEMS CORPORATION, d/
b/a Madison square Garden, a corporation; Jason
Vogel, an individual; and Ryan Halkatt, an indi-
vidual, Defendants.
**No. 04 Civ.8151(RWS).**

May 6, 2005.

Outten & Golden, New York, NY, By: Kathleen
Peratis, Tammy Marzigliano, for Plaintiff, of coun-
sel.
Morgan, Lewis & Bockius, New York, NY, By:
Christopher A. Parlo, Christopher P. Reynolds, for
Defendants, of counsel.

*OPINION*

SWEET, J.

**\*1** Defendants Cablevision Systems Corporation
("Cablevision"), Madison Square Garden ("MSG"),
a limited partnership, Jason Vogel ("Vogel") and
Ryan Halkatt ("Halkatt") (collectively, the
"Defendants") have moved pursuant to Rule
12(b)(6), Fed. R. Civ. P ., to dismiss in part the
Complaint of Courtney Prince ("Prince") alleging
employment discrimination in violation of federal,
state, and municipal statute, and common law tort.
For the reasons set forth below, the motion is gran-
ted in part.

*Prior Proceedings*

Prince filed her Complaint on October 18, 2004.
The First Cause of Action asserts claims pursuant
to 42 U.S.C. §§ 2000e*etseq* . ("Title VII") against
MSG for sexual harassment, wrongful discharge,
and retaliation. The Second and Third Causes of

Action assert state [FN1] and municipal law [FN2]
claims against all defendants for sexual harassment,
wrongful discharge, and retaliation. The Fourth
Cause of Action asserts state law assault and bat-
tery claims against Vogel. The Fifth and Sixth
Causes of Action assert aiding and abetting claims
against Halkatt pursuant to the NYSHRL and the
NYCHRL. On November 30, 2004, the Defendants
answered the Complaint.

> FN1. Prince's state law claims are brought
> pursuant to the New York State Human
> Rights Law ("NYSHRL").*See* N.Y. Exec.
> L. §§ 290*etseq.*

> FN2. Prince's municipal law claims are
> brought pursuant to the New York City
> Human Rights Law
> ("NYCHRL").*See*N.Y. Admin. Code §§
> 8-101*etseq.*

Pursuant to Fed.R.Civ.P. 12(b)(6), the Defendants
moved on November 30, 2004 to dismiss in part the
First, Second, and Third Causes of Action on the
grounds that the allegations are insufficient to sup-
port claims of hostile work environment and to im-
pute liability to MSG. The Defendants also sought
dismissal of the state and municipal law claims
against the individual defendants on the following
alternative grounds: (1) that the state and municipal
claims are insufficient as a matter of law to support
individual liability, and (2) that supplemental juris-
diction should not be exercised over the claims.

The Defendants have not moved to dismiss those
portions of the First, Second and Third Causes of
Action that allege that MSG retaliated against
Prince in violation of federal, state, and municipal
law.

The motion was heard and marked fully submitted
on January 19, 2005.

*The Parties*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))

Prince is a professional figure skater who was employed as a member and captain of the Ranger City Skaters (the "Skaters"). The Skaters are ice skating cheerleaders of the New York Rangers (the "Rangers"), a professional hockey team. (*See* Compl. ¶ 1).

MSG is a limited partnership and the former employer of Prince. (*Seeid.* ¶¶ 18, 21).

Vogel is an employee of MSG and deputy director of public relations for the Rangers. (*Seeid.* ¶ 23.)

Halkatt, who was Prince's immediate supervisor, is employed by MSG as the director of game-day presentation for the Rangers. (*Seeid.* ¶ 22.)

*The Facts*

The following facts are drawn from the allegations contained in the Complaint. All well-pleaded allegations are accepted as true for the purposes of this motion. *SeeChambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The following statements do not constitute findings of the Court.

**\*2** Prince was hired by MSG in the fall of 2001 to be a member of the Skaters, which was formed in 2002. (*See* Compl. ¶ 21.) She was made captain of the team in August, 2003. (See *id.* ¶ 25.)In this capacity, Prince's duties included communicating to the Skaters the directives of management. (*Seeid.*)

MSG featured the Skaters on the Rangers website and as part of the team's public relations program. (*Seeid.* ¶ 39.)Among their duties, Prince and other Skaters were required to appear at certain postgame events, a duty for which they received no additional compensation. (*Seeid.* ¶ 28.)

It was MSG's official policy that the Skaters appear sexually alluring. (*Seeid.* ¶ 48.)MSG apparently encouraged the Skaters to stuff their bras to enhance their breast size and to follow strict diet regimens that included use of diet pills in some instances. (*Seeid.* ¶¶ 47, 49, 50.)Although MSG told the

Skaters not to fraternize with Rangers team members, the Skaters were required or expected to fraternize with MSG management at post-game events. (*Seeid.* ¶¶ 28, 35, 51.)MSG management, including Halkatt, took steps to ensure that certain Skaters who were "fancied" by MSG managers attended these events, and he directed Prince to facilitate this directive. (*Seeid.* ¶ 35.)Underage Skaters have attended these events, at which alcohol was served. (*Seeid.* ¶ 36.)In some instances, MSG management personnel engaged in sex talk with the Skaters. (*Seeid.* ¶ 51.)

Prince, other Skaters, and members of MSG management were in attendance at one of these postgame events on December 22, 2003, at a bar called Lobby. (*Seeid.* ¶ 28). Prince and other Skaters agreed to leave Lobby and go to a bar called Daddy-O's. (*Seeid.* ¶ 24.)Vogel and another male accompanied Prince to Daddy-O's. (*Seeid.* ¶ 30.)

At Daddy-O's, Vogel attempted to kiss Prince, told her that he wanted to have sex with her and other Skaters, and solicited her to go into the public bathroom to have sex with him. (*Seeid.* ¶ 31.)Prince rejected these advances. (*Seeid.*)When Prince realized no other Skaters were arriving at Daddy-O's, she left. (*Seeid.* ¶ 32.)

Following these events, Prince advised her teammates what had happened with Vogel and warned them to stay away from him. (*Seeid.* ¶ 33.)One teammate said that an MSG manager had previously warned her about Vogel. (*Seeid.* ¶ 34.)Not long afterward, MSG learned that Prince had made allegations about a member of MSG management. (*Seeid.* ¶ 37.)On January 22, 2004, MSG alleged that Prince: (1) had disparaged MSG management and (2) had falsely accused a member of management of being a "sexual predator." (*Seeid.*)Thereafter, MSG and Halkatt did not call Prince for work, and they deleted references to her from the Rangers website. (*Seeid.* ¶¶ 38, 39.)

**\*3** Prince filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))

sexual harassment and retaliation, and the EEOC issued a finding of Probable Cause and an Order of Conciliation. (See id. ¶¶ 2-3, 11-12.)

*Discussion*

As the Defendants have previously filed an answer in this action, their motion to dismiss under Rule 12(b)(6) is untimely. See Fed.R.Civ.P. 12(b) (stating that "[a] motion making any of these defenses [under Rule 12(b) ] shall be made before pleading if a further pleading is permitted"). However, the Second Circuit has held that "a motion to dismiss for failure to state a claim ... that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)."*Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (footnote omitted) (noting that district courts within the Second Circuit as well as courts of appeals in other circuits have adopted the same conclusion). The Defendants' motion to dismiss under Rule 12(b)(6) thus will be construed as a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) and, as such, is deemed timely. See Fed.R.Civ.P. 12(c) (stating that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings"). The standard for granting a Rule 12(c) motion for judgment on the pleadings "is identical to that of a Rule 12(b)(6) motion for failure to state a claim."*Patel,* 259 F.3d at 126 (citing *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998).

*A. 12(c) Standard*

In considering a motion to dismiss pursuant to Rule 12(c), Fed.R.Civ.P., the court should construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (citing *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001))."The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."*Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."*Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000).

The Supreme Court has clarified the standard for dismissal as it relates to employment discrimination claims. In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Court, in reviewing the Second Circuit's use of a heightened pleading standard for discrimination claims brought under Title VII and the Age Discrimination in Employment Act (ADEA), held that a plaintiff bringing an employment discrimination claim is required only to comply with the liberal rules for notice pleading set forth in Fed.R.Civ.P. 8(a)(2).See id. at 507.The plaintiff must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief,"Fed.R.Civ.P. 8(a)(2), and "[s]uch a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." ' *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

*B. Title VII/NYSHRL/NYCHRL Framework*

*1. The Title VII Disparate Treatment Claims*

**\*4** In the First Cause of Action, Prince alleges, *interalia,* that MSG sexually harassed and discharged her in violation of Title VII. The Second Circuit has stated that:

a plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that [s]he has suffered an adverse job action under cir-

Not Reported in F.Supp.2d                 FOR EDUCATIONAL USE ONLY                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

cumstances giving rise to an inference of discrimin-
ation on the basis of race, color, religion, sex, or
national origin, or (2) by demonstrating that harass-
ment on one or more of these bases amounted to a
hostile work environment.

*Feingold v. New York,* 366 F.3d 138, 149 (2d
Cir.2004) (quoting *Raniola v. Bratton,* 243 F.3d
610, 617 (2d Cir.2001)).

With respect to disparate treatment claims, Title
VII provides, in pertinent part, as follows:

[i]t shall be an unlawful employment practice for an
employer-

(1) to fail or refuse to hire or to discharge any indi-
vidual, or otherwise to discriminate against any in-
dividual with respect to his compensation, terms,
conditions, or privileges of employment, because of
such individual's race, color, religion, sex, or na-
tional origin; or

(2) to limit, segregate, or classify his employees or
applicants for employment in any way which would
deprive or tend to deprive any individual of em-
ployment opportunities or otherwise adversely af-
fect his status as an employee, because of such indi-
vidual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

2. *The Title VII Retaliation Claim*

The First Cause of Action also asserts that MSG re-
taliated against Prince in violation of Title VII.
With respect to retaliation, Title VII provides, in
pertinent part, that:

[i]t shall be an unlawful employment practice for an
employer to discriminate against any of his employ-
ees ... because [such employee] has opposed any
practice made an unlawful employment practice by
this subchapter, or because he has made a charge,
testified, assisted, or participated in any manner in
an investigation, proceeding, or hearing under this

subchapter.

42 U.S.C. § 2000e-3(a).

3. *The NYSHRL and NYCHRL Claims*

The Second, Third, Fifth, and Sixth Causes of Ac-
tion assert claims of sexual harassment, discharge
and retaliation in violation of the NYSHRL and
NYCHRL. "[S]ince claims under the NYSHRL
[and NYCHRL] are analyzed identically to claims
under ... Title VII, the outcome of an employment
discrimination claim made pursuant to the NY-
SHRL [or NYCHRL] is the same as it is under ...
Title VII" and need not be addressed separately.
*Smith v. Xerox Corp.,* 196 F.3d 358, 363 n. 1 (2d
Cir.1999) (citing *Leopold v. Baccarat, Inc.,* 174
F.3d 261, 264 n. 1 (2d Cir.1999)); *seealsoMack v.
Otis Elevator Co.,* 326 F.3d 116, 122 n. 2 (2d
Cir.2003) (" 'Our consideration of claims brought
under the state and city human rights laws parallels
the analysis used in Title VII claims." ') (quoting
*Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1
(2d Cir.2000)).

C. *The Complaint Is Dismissed With Prejudice As
To Cablevision*

*5 Despite the fact that Prince has stated that she
was employed by MSG, she has asserted employ-
ment discrimination claims against Cablevision.
The Court takes judicial notice of the following
facts, which are matters of public record: (1)
Madison Square Garden, L.P. is a limited partner-
ship organized pursuant to the laws of the State of
Delaware, and (2) Cablevision Systems Corporation
is a corporation organized pursuant to the laws of
the State of Delaware. *See,e.g.,Blue Tree Hotels
Inv. (Canada), Ltd. v. Starwood Hotels & Resorts
Worldwide, Inc.,* 369 F.3d 212 (2d Cir.2004)
(stating that in the context of a 12(b)(6) motion, a
court may consider public records that are outside
the pleadings). In short, MSG and Cablevision are
separate legal entities.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                 FOR EDUCATIONAL USE ONLY                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

"[A]s a matter of policy, courts presume the separateness of legally distinct corporate entities."*Darden v. DaimlerChrysler N.A. Holding Corp.,* 191 F.Supp.2d 382, 395 (S.D.N.Y.2002) (dismissing Title VII claim where plaintiff failed to demonstrate a basis for treating two separate entities as a single employer). Therefore, in order to state a viable Title VII claim against Cablevision (a parent entity) based on the conduct of MSG (its subsidiary), Prince must make allegations concerning one or more of the following factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control."*Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995). The second of these factors-*i.e.,* centralized control of labor relations-is accorded particular weight by courts of this district. *See,e.g.,Toriola v. New York City Transit Authority,* No. 02 Civ. 5902(RJH), 2005 WL 550973, at *5 (S.D.N.Y. Mar.9, 2005); *Parrish v. Sollecito,* 280 F.Supp.2d 145, 157 (S.D.N.Y.2003).

Here, Prince has alleged no facts to justify overcoming the presumption that Cablevision and MSG are separate entities. The Complaint states that Prince was hired by MSG. There is no allegation that Cablevision was Prince's employer. Nor is there any allegation that Cablevision exerted centralized control over MSG's labor relations policies and decisions or took any other action that would give rise to Title VII liability pursuant to the *Cook* factors. In the absence of any such allegations, the Complaint must be dismissed as to Cablevision. *Seeid.*

Prince has suggested that an amended complaint may provide a basis for retaining Cablevision as a party. Based on the pleadings to date, such an outcome seems dubious. Therefore, Prince's claims against Cablevision are dismissed with prejudice.

D. *The Title VII/NYSHRL/NYCHRL Harassment Claims Are Dismissed*

In the First Cause of Action, Prince asserts, *interalia,* that MSG is liable for sexual harassment in violation of Title VII.[FN3]In the Second and Third Causes of Action, Prince asserts, *interalia,* that MSG, Vogel and Halkatt are liable for harassment in violation of the NYSHRL and NYCHRL.

> FN3. EEOC guidelines provide that:
>
> > [u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.
>
> 29 C.F.R. § 1604.11(a).

*6 All three of these causes of action are based on the theory that Prince was subjected to a hostile work environment. *See*29 C.F.R. § 1604.11(a)(3) (stating that "verbal or physical conduct of a sexual nature constitute sexual harassment when ... such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment").

In this circuit, the elements of a Title VII hostile work environment claim are well established:

In order to prevail on a hostile work environment claim, a plaintiff must first show that "the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment...." ' *Alfano v.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                              Page 6
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

*Costello,* 294 F.3d 365, 373 (2d Cir.2002) (citations omitted); *seealsoOncale v. Sundowner Offshore Servs., Inc.,* [523 U.S. 75, 78] (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). Second, the plaintiff must demonstrate a specific basis for imputing the conduct creating the hostile work environment to the employer.*Alfano,* 294 F.3d at 373....

Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."*Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.,* [510 U.S. 17, 21] (1993)).

*Feingold,* 366 F.3d 138, 149-50 (2d Cir.2004).

Prince has alleged a single instance of harassment occurring off company premises and an unspecified number of occasions of inappropriate sex talk. Specifically, she alleges that on December 22, 2003, after attending a party at a bar, she, Vogel and another male voluntarily left the party and went to another bar. At the second bar, Vogel allegedly made sexual advances toward Prince, solicited her for sex, and told her that he wanted to have sex with other women on the team. He tried to kiss her and put his tongue down her throat. Both Vogel and the other man told Prince they wanted to go into the bathroom and have sex with her. Prince rejected Vogel's alleged advances, waited to see if any of the other Skaters were coming to the bar, and then left the bar by herself when no other Skaters arrived. Prince has also alleged that MSG managers routinely engaged in inappropriate sex talk with certain Skaters, both in their offices and also at MSG-sponsored post-game parties and gatherings.

*1. Prince Has Properly Alleged A Nexus Between The Alleged Conduct And Her Work Environment*

The Supreme Court has stated that in order for conduct to give rise to a hostile work environment, a nexus must exist between the alleged conduct and the work environment. *SeeHarris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *seealsoCarter v. Caring for the Homeless,* 821 F.Supp. 225, at 228, 230 (S.D.N.Y.1993) (stating that plaintiff's allegations of harassment, including an incident that occurred off work premises, were not related to his employment, and were, therefore, insufficient to state a hostile work environment claim).

**\*7** Here, Prince provides the requisite nexus by alleging that attendance at post-game events was considered part of her job.

*2. The Alleged Conduct At Issue Was Not Severe Or Pervasive Enough To Support A Hostile Or Environment Claim*

Even if a sufficient nexus to the work environment has been alleged, the allegations must still satisfy the objective requirement that the conduct at issue be " 'severe or pervasive enough to create an objectively hostile or abusive work environment," ' *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002) (quoting *Harris,* 510 U.S. at 21);*seealsoPerry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997). A canvas of relevant decisions from this Circuit and beyond indicates that Prince's allegations fail to satisfy this objective requirement.

In *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d Cir.1998), the Second Circuit affirmed the dismissal of a Title VII hostile work environment claim where the plaintiff's supervisor told her she had been voted the "sleekest ass" in the office and had "deliberately" touched her breasts with the papers in his hand. In so ruling, the court reasoned that while the conduct is "obviously offensive and inappropriate," it was not "of sufficient severity or

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

pervasiveness as to 'alter the conditions of her employment." ' *Id.* at 768 (internal citation omitted).

In *Thomas v. Westchester County Health Care Corp.,* 232 F.Supp.2d 273 (S.D.N.Y.2002), the plaintiff alleged that a doctor affiliated with the defendant's dental program, in which the plaintiff worked, had engaged "in a long history of physical and sexual abuse," which culminated in the doctor's grabbing and squeezing her buttocks. The final event allegedly took place at a party held in a neighboring town that was not related to, or on the property of, the defendant. *Id.* at 277.After concluding that there was no long history of abuse, and that the only "encounter" was on the evening of the alleged sexual assault, the court dismissed the plaintiff's claims. *Id.* at 279-80.In granting defendant's motion to dismiss, the Court concluded:

[Plaintiff] could prove no set of facts to establish that such a brief incident, which was not followed by any further sexual comments or touchings, could be objectively viewed as sexual harassment in the workplace. Indeed, the incident did not occur during the work hours or on work grounds, but rather after work at an off-site restaurant.

*Id.* at 280.

Similarly, in *O'Dell v. Trans World Entm't Corp.,* 153 F.Supp.2d 378, (S.D.N.Y.2001), the plaintiff alleged: (1) that she had been repeatedly asked out on dates by a fellow store manager, (2) that the store manager had made comments about her appearance (including that he "liked" certain clothes plaintiff wore); (3) that the employee had sent her numerous e-mails professing his love for her; and (4) that the store manager called her at work and at home, gave her gifts, and played her a song she found offensive. *Id.* at 386-87.This repeated conduct, occurring in the work environment, was held insufficient as a matter of law to establish a claim. *Id.* at 386.

*\*8 Courts have held that conduct far more egregious than that alleged here was insufficient as a matter of law to establish a hostile work environment, even when such conduct occurred in the workplace. *See,e.g.,Benette v. Cinemark U.S.A., Inc.,* 295 F.Supp.2d 243, 247 (W.D.N.Y.2003) (manager's constant use of the word "fuck" and comments regarding female employees having a "nice ass" or "big tits" not severe or pervasive); *Forts v. City of New York Dep't of Corrections,* No. 00 Civ. 1716(LTS), 2003 WL 21279439, at *6-*7 (S.D.N.Y. June 4, 2003) (several incidents, including comment about "sex in all positions," a bondage poster showing men and women, and a co-worker touching plaintiff's shoulder and running away, not severe or pervasive); *Gregg v. N.Y. State Dep't of Tax'n & Fin.,* No. 94 Civ. 1408(MBM), 1999 WL 225534, at *12 (S.D.N.Y. Apr.19, 1999) (ten to fifteen allegedly inappropriate conversations, four instances of allegedly offensive touching, and repeated invitations to meals, drinks, and such over three to four months were not "sufficiently severe or pervasive"); *Lucas,* 54 F.Supp.2d at 148 (brushing up against plaintiff on three occasions, touching her hand, back or shoulder on five to seven occasions, suggesting that plaintiff "wanted to go to bed with [harasser], asking plaintiff the color of plaintiff's underwear on two to three occasions not sufficient to constitute a hostile work environment); *Grossman v. The Gap, Inc.,* No. 96 Civ. 7063(RPP), 1998 WL 142143, at *5 (S.D.N.Y. Mar.25, 1998) (repeatedly asking plaintiff out on dates, following her around the store asking her to model a bathing suit, and making one sexually suggestive comment insufficient).

Other than the post-game incident involving Vogel, the only other allegation relating to the work environment is that unidentified managers routinely engaged in "inappropriate sex talk" with unidentified Skaters, on unspecified occasions. (*see* Compl. ¶ 51.) "Sex talk" is far from a term of art and fails to establish a pervasive and hostile environment.

Prince has argued that her allegations concerning a hostile work environment are sufficient to survive Defendants' motion in light of the *Swierkiewicz* de-

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 8
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))

cision. Prince's argument that *Swierkiewicz* poses an insurmountable obstacle to Defendants' 12(c) motion is unavailing. Even after *Swierkiewicz,* courts have dismissed hostile work environment claims at the pleadings stage where, as here, the alleged conduct was not severe or pervasive enough to warrant relief. *See,e.g.,Gourdine v. Cabrini Med. Ctr.,* 307 F.Supp.2d 587, 596 (S.D.N.Y.2004) (dismissing claim and holding that alleged course of harassment, ridicule and criticism, including comment that plaintiff would be better off marrying a Jewish man rather than an African-American, was insufficient to establish a hostile work environment claim); *Whyte v. Contemporary Guidance Servs., Inc.,* No. 03 Civ. 5544(GBD), 2004 WL 1497560, at *4 (S.D.N.Y. July 2, 2004) (granting dismissal of Title VII claims pursuant to Rule 12(b)(6)).

*9 Prince also argues that dismissal is inappropriate because other courts have declined to dismiss hostile work environment claims based on individual acts. As a general rule, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive."*Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 n. 5 (2d Cir.1995). Nonetheless, Prince is certainly correct that "harassment need not persist for a long time to be actionable, if it is sufficiently ... intense." 3 Lex K. Larson, *Employment Discrimination* § 46.05[4][b] (2d ed.2003). Moreover, as stated recently by a court of this circuit,

[i]n some instances, a single act can create a hostile work environment-"if, by itself, it can and does work a transformation of the plaintiff's workplace."*Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002). Such single acts must be "extraordinarily severe." *Id.* (quoting *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000)).*CompareHowley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir.2000) (single instance of obscene comments by coworker sufficed to create hostile work environment under Title VII where comments were

loud, prolonged, made in front of "a large group in which [the plaintiff] was the only female and many of the men were her subordinates," and "included charges that [the plaintiff] had gained her office of lieutenant only by performing fellatio."); *withQuinn,* 159 F.3d 759, 768 (2d Cir.1998) (supervisor's comment to plaintiff on one occasion that "she had been voted the 'sleekest ass' in the office," and his "deliberat[e] touch[ing] [of her] breasts with some papers that he was holding in his hand" on another occasion, were inadequate to support hostile work environment claim).

*Brierly v. Deer Park Union Free School Dist.,* 359 F.Supp.2d 275, 293 (E.D.N.Y.2005).

In terms of its severity, the conduct at issue here (*i.e,* the December 22, 2003 incident at Daddy-O's in which Vogel made sexual advances and attempted to kiss Prince) is more akin to the conduct at issue in *Quinn* than that at issue in *Howley.*Therefore, it is concluded that this particular single incident is insufficient as a matter of law to support a hostile work environment claim. *See,e.g.,Balance v. Energy Transp. Corp.,* No. 00 Civ. 9180(LMM), 2001 WL 1246586, at *11 (S.D.N.Y. Oct.18, 2001) (on a motion to dismiss, holding that one incident in which defendant allegedly untied plaintiff's apron and touched her buttocks did not "amount to an environment permeated with discrimination"); *Lucas v. S. Nassau Communities Hosp.,* 54 F.Supp.2d 141, 147 (E.D.N.Y.1998) (dismissing sexual harassment claims where plaintiff alleged that her supervisor had touched her on several isolated occasions).

Prince argues that her sexual harassment claim must be viewed in light of MSG's alleged actions in creating a "sexualized atmosphere" in which the Skaters were rendered into "objects of sexual desire." Prince argues that pursuant to a recent Second Circuit decision, a hostile work environment claim can be supported based on the fact that MSG permitted this sexualized environment to persist unabated. *SeePetrosino v. Bell Atlantic,* 385 F.3d 210 (2d Cir.2004). The *Petrosino* court held that:

Not Reported in F.Supp.2d            FOR EDUCATIONAL USE ONLY                                    Page 9
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))

**\*10** a reasonable jury could conclude that the persistent sexually offensive remarks at [the place of employment] and the graffiti [drawn by plaintiff's co-workers there] were particularly insulting to women because these actions cast women in a demeaning role: as objects of sex-based ridicule and subjects for sexual exploitation. It is within this context that the remaining evidence of sexual harassment must be considered. In this light, plaintiff's sexual assault by a drunken co-worker within a few months of joining the ... department might well be viewed by a reasonable jury not simply as an isolated incident but as a tangible extension of the pervasive demeaning talk to [plaintiff] personally. The assault communicated to plaintiff that she was perceived, at least by one co-worker, not as a professional colleague, but as one more woman available for sexual exploitation.

*Id.* at 224.In *Petrosino,* the record contained facts that the "workplace disparagement of women ... [was] repeated day after day over the course of several years without supervisory intervention...."*Id.* at 222.Such disparagement included: (i) crude sexual graffiti, (ii) sexual comments conveying a profound disrespect for women, and (iii) disparaging sexually explicit language directed at plaintiff. *Id.* at 214-15.

In contrast, with the exception of the incident at Daddy-O's, the Complaint fails to allege a single instance in which Prince ever heard or otherwise witnessed a single derogatory comment or other instance of sex-based offensive conduct in the workplace at any time. Other than Vogel's conduct, the Complaint does not allege any conduct by co-workers witnessed by Prince that occurred in the workplace that would support her conclusory allegation of a "sexualized atmosphere," or that she was present for, or affected by, any such conduct. Because the hostile environment claims fail to give fair notice of any facts or grounds which could support them, these claims are dismissed. *See,e.g.,Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1271 (11th Cir.2004) (stating that *Swierkiewicz*"did not even remotely suggest that a

pleading could survive dismissal when it consisted of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."); *Educadores Puertorriguenos en Accion v. Hernandez,* 367 F.3d 61, 68 (1st Cir.2004) ("From [*Swierkiewicz* ] we intuit that ... the complaint should at least set forth minimal facts as to who did what to whom, when, where and why"); *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (stating that "[t]he words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").

Furthermore, since Prince has not alleged that she witnessed any sex-based, inappropriate conduct other than the incident at Daddy-O's, she has failed to plead sufficient facts to show that she subjectively perceived the work atmosphere to be "sexualized," let alone hostile. This defect in her Complaint provides an independent basis for the dismissal of her harassment claim. *See,e.g.,Alfano,* 294 F.3d at 374 (stating that for a hostile work environment to be actionable, the victim must also subjectively perceive the environment to be hostile).

**\*11** Because the Complaint fails to give Defendants fair notice of the grounds upon which Prince's claim of a "sexualized atmosphere" rests, this context cannot be used to transform a single inappropriate incident in a bar into the culmination of a course of workplace conduct.

Furthermore, Prince has failed to allege adequately that "a specific basis exists for imputing the conduct that created the hostile environment to the employer."*Mack v. Otis Elevator Co.,* 326 F.3d 116, 122 (2d Cir.2003), *cert.denied,*540 U.S. 1016, 124 S.Ct. 562, 157 L.Ed.2d 428 (2003) (citations omitted). Prince's argument for imputing liability to MSG is that the Court must infer from the Complaint that MSG was aware of prior instances of inappropriate conduct by Vogel and that MSG there-

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                   Page 10
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

fore should have taken steps to prevent any repeat of such conduct. It is true that Prince has alleged that an unnamed Skater told her that "John Rossco," Vogel's supervisor, had warned her about Vogel, thus implying knowledge on the part of MSG. (*See* Compl. ¶ 34.)

However, is no allegation that Vogel ever engaged in any prior improper conduct at any time, that any such conduct occurred in the MSG workplace, or that MSG had knowledge of any such prior conduct. In order to allege that liability can be imputed to MSG, Prince must give MSG and Vogel fair notice of the grounds for the imputation of such liability.

As to the only other basis for imputing liability to MSG (*i.e.,* that once it learned of the alleged harassment it did nothing about it), there are no facts in the Complaint upon which relief could be granted. The Complaint acknowledges that an investigation was immediately initiated. (*See* Compl. ¶¶ 1, 42, 43.) There is no allegation that there was no complaint procedure, or that no action was taken when MSG learned of the conduct at issue. Therefore, the allegations are insufficient to impute liability to MSG on this basis.

### E. *The Termination Claims Are Dismissed As Duplicative Of The Retaliation Claims*

In the First, Second and Third Causes of Action, Prince alleges that she was terminated in violation of Title VII, NYSHRA and NYCHRA. Disparate treatment claims such as these-*i.e.,* those based on adverse employment actions-are analyzed pursuant to the test announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973). In order to establish a *primafacie* case of discrimination on this basis, a plaintiff must show: (1) that he or she is a member of a protected class, (2) that he or she was qualified for the position in question, (3) that he or she suffered an adverse employment action, and (4) that the adverse employment action occurred under circumstances

giving rise to an inference of discrimination. *Seeid.* at 802;*Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir.2003); *Collins v. New York City Transit Auth.,* 305 F.3d 113, 118 (2d Cir.2002); *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000).

There are no allegations in the Complaint that could support an inference that the termination occurred in circumstances giving rise to an inference of discrimination. Moreover, as pled, the termination claims are duplicative of the retaliation claims.

### F. *The Retaliation Claims Against Halkatt and Vogel Are Dismissed*

**\*12** The Second and Third Causes of Action assert NYSHRL/NYCHRL retaliation claims against Halkatt. "To establish a *primafacie* case of ... retaliation, a plaintiff must show that '(1) she was engaged in [a protected] activity ...; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the employer took adverse action against the plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." ' *Carchidi v. Kenmore Development,* 123 Fed. Appx. 435, 436 (2d Cir.2005) (quoting *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 116 (2d Cir.2000)).

Since there are no allegations that either Halkatt or Vogel (1) had an ownership interest in MSG, or (2) had the power to hire or fire Prince, these allegations fail as a matter of law. *SeeTomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995) (stating that "the New York Court of Appeals held that an employee is not individually subject to suit under [the NYSHRL] as an employer 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." ') (quoting *Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 473 N.E.2d 11 (1984)). Moreover, since neither Halkatt nor Vogel is alleged to have participated in the adverse job action against Prince, the retaliation claims asserted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 11
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

against them fail as a matter of law.

### G. *The Aiding and Abetting Claims Against Halkatt Are Dismissed*

The Fifth and Sixth Causes of Action assert NY-SHRL/NYCHRL aiding and abetting claims against Halkatt. In support of these claims, the Complaint alleges that Halkatt engaged in the following conduct:

• issuing directives to the Skaters through Prince. (*See* Compl. ¶ 25.)

• instructing Prince to urge other Skaters to attend post-game parties. (*See id.* ¶ 28, 483 N.Y.S.2d 659, 473 N.E.2d 11.)

• telling Prince to make sure certain Skaters attended after-game events. (*See id.* ¶ 35, 483 N.Y.S.2d 659, 473 N.E.2d 11.)

• telling Prince that she was not needed when she asked if she should report for work. (*See id.* ¶ 38, 483 N.Y.S.2d 659, 473 N.E.2d 11.)

• taking away the cookies in the Skaters' locker room because he said they were getting too fat. (*See id.*)

Prince contends that the basis for naming Halkatt as an aider and abettor is his alleged participation in discrimination, but no discrimination by Halkatt or participation in discrimination by Halkatt is alleged in the Complaint. In the Complaint, MSG, not Halkatt, is alleged to have terminated Prince's employment. (*See id.* ¶¶ 30, 31, 42, 483 N.Y.S.2d 659, 473 N.E.2d 11.) In her opposition papers, Prince concedes that MSG terminated her, and that Halkatt merely confirmed the action taken by MSG.

The Second Circuit has held that pursuant to the aider and abettor provisions of the NYSHRL, "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable."*Tomka*, 66 F.3d at 1317. Here the conduct giving rise to the retaliation claims was MSG's alleged retaliation against Prince for complaining of Vogel's conduct at the bar. There is no allegation that Halkatt participated in this conduct. Accordingly, the aiding and abetting claims against Halkatt are dismissed.

### H. *Prince Has Stated Assault and Battery Claims Against Vogel*

**\*13** The Fourth Cause of Action asserts assault and battery claims against Vogel based on his conduct at Daddy-O's on the night of December 22, 2003. Under New York law, "an assault is an intentional attempt, displayed by violence or threatening gesture, to do injury to, or commit a battery upon, the person of another." 6A Allan Schwartz, *New York Jurisprudence 2d* § 1 (Assault-Civil Aspects) (2003). Under New York law, "[a] battery is an intentional wrongful physical contact with another person without consent. Even a touching of a person constitutes a battery if done without consent and in a rude, violent, and angry or insolent manner ."*Id.*

Based on the facts alleged, Prince has stated claims against Vogel for assault and battery. Furthermore, the exercise of supplemental jurisdiction over these state law claims is appropriate. As the Second Circuit has stated:

Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to "form part of the same case or controversy under Article III of the United States Constitution."A state law claim forms part of the same controversy if it and the federal claim "derive from a common nucleus of operative fact."*Cicio v. Does,* 321 F.3d 83, 97 (2d Cir.2003) (quoting *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 165, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997)).

*Briarpatch Ltd. V. Phoenix Pictures, Inc.,* 373 F.3d

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 12
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305
**(Cite as: Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.))**

296, 308 (2nd Cir.2004).

Here, the assault and battery claims derive from the same nucleus of operative facts that gave rise to the retaliation claims, and the factors identified in 28 U.S.C. 1367(c) militate in favor of the exercise of jurisdiction over these state law claims.[FN4]

> FN4.Section 1367(c) provides that a district court may decline to exercise supplemental jurisdiction over a state law claim if:
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
>
> 28 U.S.C. § 1367(c).

*Conclusion*

Prince's retaliation claims against MSG pursuant to Title VII, the NYSHRL, and the NYCHRL were not the subject of Defendants' motion to dismiss the Complaint in part. Defendants' motion is denied with respect to the Complaint's Fourth Cause of Action. Defendants' motion is otherwise granted. Leave to file an amended complaint within twenty (20) days is granted.

It is so ordered.

S.D.N.Y.,2005.
Prince v. Cablevision Systems Corp.
Not Reported in F.Supp.2d, 2005 WL 1060373 (S.D.N.Y.), 95 Fair Empl.Prac.Cas. (BNA) 1305

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.