**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CARLOS ZELAYA, et al.,                 :

            Plaintiffs,          :    INDEX NO. 08 Civ. 2933 (LMM)

     -against-               :    **ANSWER TO SECOND AMENDED COMPLAINT**

MADISON SQUARE GARDEN, L.P., et al.,   :

            Defendants.        **JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MADISON SQUARE GARDEN'S ANSWER**
**TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

      Defendant Madison Square Garden, L.P. ("MSG"), hereby answers Plaintiffs' Second Amended Complaint as follows:

**PARTIES**

      1.     Plaintiff Carlos Zelaya is a natural person and citizen of the foreign state of Honduras.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 1 of the Second Amended Complaint and therefore denies all allegations.

      2.     The decedent Ruth Zelaya was a natural person and citizen of the foreign state of Honduras and spouse of Carlos Zelaya.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 2 of the Second Amended Complaint and therefore denies all allegations.

3.      The decedent Jose Carlo Zelaya, was a natural person and citizen of the foreign state of Honduras and son of Carlos and Ruth Zelaya.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 3 of the Second Amended Complaint and therefore denies all allegations.

4.      On or about February 13, 2008, the Surrogate Court of the State of New Jersey, appointed Carlos Zelaya administrator of the Estate of Jose Carlo Zelaya, deceased, and hereinafter shall serve as the Administrator Ad Prosequendum of the Estate of Jose Carlo Zelaya, deceased.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 4 of the Second Amended Complaint and therefore denies all allegations.

5.      On or about March 13, 2008, the Surrogate Court of the State of New Jersey appointed Carlos Zelaya as guardian over Ruth Zelaya, and on May 13, 2010, appointed Carlos Zelaya as the Administrator Ad Prosequendum of the Estate of Ruth Zelaya.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 5 of the Second Amended Complaint and therefore denies all allegations.

6.      Defendant Madison Square Garden, L.P. (hereinafter "MSG") is a limited partnership formed in Delaware with its principal place of business at 4 Pennsylvania Plaza, New York, New York, and is a wholly owned subsidiary of Cablevision.

**ANSWER:**   MSG admits that it is a limited partnership organized under the laws of the state

of Delaware with its principal place of business at 4 Pennsylvania Plaza, New York, New

York; admits that it is an indirect wholly owned subsidiary of Madison Square Garden, Inc.;

and denies all remaining allegations.

7.     Madison Square Garden is the owner and operator of the sports and entertainment

arena commonly known as Madison Square Garden (hereinafter "The Garden") located at 7th

Avenue between 31st St. & 33rd St., New York, New York.

**ANSWER:**     MSG admits that it is the owner and operator of the sports and entertainment

arena commonly known as "Madison Square Garden" located at 7th Avenue between 31st Street

and 33rd Street, New York, New York.

8.     Defendant 247 W. 37th Street LLC LLC i/s/h/a Stitch Bar & Lounge Inc.

(hereinafter 247 W. 37th Street LLC) is a New York corporation with its principal place of

business at 247 W. 37th St., New York, New York.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the

allegations in paragraph 8 of the Second Amended Complaint and therefore denies all

allegations.

9.     247 W. 37th Street LLC owns and operates a food and drink establishment

located at 247 W. 37th St., New York, New York commonly known at Stitch Bar & Lounge.

**ANSWER:**     MSG admits that an establishment commonly known as Stitch is located at 247

W. 37th St., New York, New York.  MSG lacks knowledge or information sufficient to form a

belief regarding any remaining allegations in paragraph 9 of the Second Amended Complaint

and therefore denies all remaining allegations.

10.     Defendant Kevin Freibott is a natural person and resident of the State of New Jersey. Mr. Freibott is in the custody of the Department of Corrections for the State of New Jersey.

**ANSWER:**     MSG admits the allegations in paragraph 10 of the Second Amended Complaint.

## JURISDICTION AND VENUE

11.     Plaintiffs are all current or former citizens of the foreign state of Honduras whereas defendants are deemed citizens of the States of Delaware, New York and New Jersey.

**ANSWER:**     Paragraph 11 of the Second Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG admits that it is properly deemed a citizen both of Delaware and New York, and that Kevin Freibott is a citizen of New Jersey.  MSG lacks knowledge or information sufficient to form a belief regarding any remaining factual allegations in paragraph 11 of the Second Amended Complaint and therefore denies any remaining factual allegations.

12.     The matter in controversy exceeds the sum of $75,000.

**ANSWER:**     MSG admits that the amount Plaintiffs' purport to seek in this matter exceeds $75,000, but denies that Plaintiffs' are entitled to recover any sum from MSG.  MSG further denies any other remaining allegations of paragraph 12 of the Second Amended Complaint.

13.     The United States District Court thus possesses original jurisdiction over this matter by way of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(a)(2).

**ANSWER:**     Paragraph 13 of the Second Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 13 of the Second

Amended Complaint and therefore denies all allegations.

14.     Venue in this matter is properly laid in the United States District Court for the

District of New York pursuant to 28 USC § 1391 because a substantial part of the underlying

events took place in the City and State of New York.

**ANSWER:**     Paragraph 14 of the Second Amended Complaint states a legal conclusion for

which no responses is required, but if a response were required, MSG lacks knowledge or

information sufficient to form a belief regarding the allegations in paragraph 14 of the Second

Amended Complaint and therefore denies all allegations.

## BACKGROUND

15.     At all times relevant to this matter, MSG was licensed to, and in fact, sold

alcoholic beverages to patrons of sporting and entertainment events hosted at The Garden.

**ANSWER:**     MSG admits that it is licensed to sell, and in fact, has sold alcoholic

beverages to patrons of sporting and entertainment events held at Madison Square Garden,

including on January 23, 2007, but denies all remaining allegations of paragraph 15 of the

Second Amended Complaint.

16.     At all times relevant to this matter, 247 W. 37th Street LLC was licensed to, and

in fact, sold alcoholic beverages to patrons of Stitch Bar & Lounge.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the

allegations in paragraph 16 of the Second Amended Complaint and therefore denies all

allegations.

17.     On or about January 23, 2007, The Garden hosted a college basketball game

between the St. John's University and the University of Pittsburgh (hereinafter the "Basketball

Game") which was sanctioned by the Big East Athletic Conference and the National Collegiate Athletic Association (hereinafter the "NCAA").

**ANSWER:**     MSG admits that MSG granted to St. John's University a license to use areas in the Madison Square Garden Sports and Entertainment Complex for the purpose of presenting St. John's University men's basketball games, including a game on January 23, 2007 against the University of Notre Dame, but denies all remaining allegations of paragraph 17 of the Second Amended Complaint.

18.     The tip-off time of the Basketball Game was scheduled for 7:30.

**ANSWER:**     MSG admits that the tip-off time of the basketball game between St. John's University and the University of Notre Dame was scheduled for at or around 7:30 p.m. and denies all remaining allegations of paragraph 18 of the Second Amended Complaint.

19.     On or about January 23, 2007, and prior to the start of the Basketball Game, Kevin Freibott patronized Stitch Bar & Lounge.

**ANSWER:**     MSG admits that Kevin Freibott visited Stitch Bar & Lounge on the evening of January 23, 2007, at a time prior to the start of the basketball game at Madison Square Garden between St. John's University and the University of Notre Dame.  MSG denies any remaining allegations contained in paragraph 19 of the Second Amended Complaint.

20.     While patronizing Stitch Bar & Lounge, Mr. Freibott was sold and consumed multiple alcoholic beverages and became visibly intoxicated.

**ANSWER:**     MSG admits that Kevin Freibott was sold and consumed one or more alcoholic beverages at Stitch Bar & Lounge on January 23, 2007.  MSG denies the remaining

allegations contained in paragraph 20 of the Second Amended Complaint.

21.     Based on reasonable information and belief, Mr. Freibott was served alcoholic beverages at Stitch Bar & Lounge Inc., after he became visibly intoxicated.

**ANSWER:**     MSG denies the allegations contained in paragraph 21 of the Second Amended Complaint.

22.     After patronizing Stitch Bar & Lounge, Mr. Freibott attended the Basketball Game at The Garden.

**ANSWER:**     MSG admits that Kevin Freibott visited MSG on January 23, 2007, sometime after he left Stitch Bar & Lounge.  MSG further admits that St. John's University was presenting a men's basketball game against the University of Notre Dame at the time during which Mr. Freibott was at MSG on that day.  MSG lacks knowledge or information sufficient to form a belief regarding any remaining allegations in paragraph 22 of the Second Amended Complaint and therefore denies all remaining allegations.

23.     While attending the Basketball Game at The Garden, Mr. Freibott was sold and consumed multiple alcoholic beverages from the concessions stand at The Garden.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 23 of the Second Amended Complaint and therefore denies all allegations.

24.     Based on reasonable information and belief, Mr. Freibott was served alcoholic beverages at The Garden well after he became visibly intoxicated.

**ANSWER:**     MSG denies all allegations contained in paragraph 24 of the Second Amended Complaint.

25.     Based on reasonable information and belief, on the date in question MSG had failed to properly hire and properly train its servants, agents and/or employees, known or unknown, to prevent serving alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, consistent with the legal requirements promulgated by the State and City of New York, regulations set forth the by the NCAA, and MSG's own posted rules, regulations and guidelines for serving alcoholic beverages during events hosted at The Garden.

**ANSWER:**     MSG denies all allegations contained in paragraph 25 of the Second Amended Complaint.

26.     Based on reasonable information and belief, on the date in question MSG had failed to assure that its servants, agents and/or employees, known or unknown, were complying with the applicable legal requirements promulgated by the State and City of New York, the regulations set forth the by the NCAA, and MSG's own posted rules, regulations and guidelines for serving alcoholic beverages during events hosted at The Garden.

**ANSWER:**     MSG denies all allegations contained in paragraph 26 of the Second Amended Complaint.

27.     Based on reasonable information and belief, on the date in question MSG authorized, condoned & permitted its servants, agents and/or employees, known or unknown, to serve alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, at events hosted at The Garden solely for economic gain.

**ANSWER:**     MSG denies all allegations contained in paragraph 27 of the Second Amended Complaint.

28.     Based on reasonable information and belief, MSG has repeatedly failed to prevent visibly intoxicated patrons from operating a motor vehicle including Kevin Freibott.

**ANSWER:**     MSG denies all allegations contained in paragraph 28 of the Second Amended Complaint.

29.     Near the conclusion of the Basketball Game, Mr. Freibott was further permitted to exit The Garden in a visibly intoxicated state despite the foreseeable harm to the public caused by the visibly intoxicated patron's operation of said vehicle including Kevin Freibott.

**ANSWER:**     MSG denies all allegations contained in paragraph 29 of the Second Amended Complaint.

30.     While operating his motor vehicle on the Pulaski Skyway (U.S. Route 1 &9) in Jersey City, New Jersey after departing from The Garden, and while still visibly intoxicated, Mr. Freibott struck the rear of the motor vehicle in which Carlos Zelaya, Ruth Zelaya and Jose Carlo Zelaya were traveling as passengers.

**ANSWER:**     MSG admits that the rear of the vehicle in which Carlos, Ruth, and Jose Carlo Zelaya were travelling as passengers on the Pulaski Skyway in Jersey City, New Jersey on the night of January 23, 2007, collided with the vehicle in which Mr. Freibott was traveling.  MSG denies all remaining allegations contained in paragraph 30 of the Second Amended Complaint.

31.     Jose Carlo Zelaya was killed as result of the collision caused by Mr. Freibott.

**ANSWER:**     MSG denies the allegations contained in paragraph 31 of the Second Amended Complaint.

32.     Ruth Zelaya was gravely injured as result of the collision caused by Mr. Freibott and died of her injuries and injury-related complications on March 24, 2010.

**ANSWER:**    MSG lacks knowledge or information sufficient to form a belief regarding

the allegations contained in paragraph 32 of the Second Amended Complaint and therefore

denies all allegations.

33.    Carlos Zelaya was seriously injured as result of the collision caused by Mr.

Freibott.

**ANSWER:**    MSG denies the allegations contained in paragraph 33 of the Second Amended

Complaint.

34.    The official investigation of the collision concluded that Mr. Freibott was entirely

at fault for the collision and that Mr. Freibott was operating his motor vehicle under the influence

of alcohol in excess of three times the legal limit, which defines drunk driving in New York and

New Jersey.

**ANSWER:**    MSG denies the allegations contained in paragraph 34 of the Second Amended

Complaint.

**COUNT I — MADISON SQUARE GARDEN
VIOLATION OF THE NEW YORK DRAM SHOP ACT, G.O.L § 11-101
AS TO CARLOS ZELAYA AND RUTH ZELAYA INDIVIDUALLY**

35.    Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

**ANSWER:**    MSG incorporates by reference its answers to paragraphs 1-34 in the Second

Amended Complaint.

36.    On or about January 23, 2007, Kevin Freibott was attending the Basketball Game

being held at The Garden.

**ANSWER:**    MSG admits that Kevin Freibott attended at least part of a basketball game

presented at MSG on January 23, 2007, and denies any remaining allegations contained in

paragraph 36 of the Second Amended Complaint and therefore denies all allegations.

37.     While Mr. Freibott was attending the Basketball Game, in violation of the New York State Dram Shop Act, G.O.L § 11-101, MSG unlawfully sold alcoholic beverages to Mr. Freibott by serving Mr. Freibott in a visibly intoxicated state.

**ANSWER:**     MSG denies all allegations contained in paragraph 37 of the Second Amended Complaint.

38.     In further violation of the New York State Dram Shop Act, G.O.L § 11-101, MSG unlawfully sold alcoholic beverages to Kevin Freibott while having failed to properly hire, train and supervise its servants, agents and/or employees to in order to prevent serving alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, consistent with the legal requirements promulgated by the State and City of New York, regulations set forth the by the NCAA, and MSG's own posted rules, regulations and guidelines for serving alcoholic beverages during events hosted at The Garden.

**ANSWER:**     MSG denies all allegations contained in paragraph 38 of the Second Amended Complaint.

39.     Having caused or contributed to Mr. Freibott's intoxication, MSG then permitted Mr. Freibott to exit The Garden and operate his motor vehicle while visibly intoxicated.

**ANSWER:**     MSG denies all allegations contained in paragraph 39 of the Second Amended Complaint.

40.     Upon exiting the Garden and operating his vehicle in a visibility intoxicated state possessing a blood alcohol level in excess of three times the legal limit, Mr. Freibott caused an

auto collision on the Pulaski Skyway with another motor vehicle occupied by Carlos Zelaya, Ruth Zelaya & Jose Carlo Zelaya.

**ANSWER:**    MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 40 of the Second Amended Complaint and therefore denies all allegations.

41.    As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya, were injured in and about their minds and bodies causing serious permanent personal injuries and emotional distress.

**ANSWER:**    MSG denies the allegations contained in paragraph 41 of the Second Amended Complaint and therefore denies all allegations.

42.    As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were caused great pain and suffering to their mind and body, and Carlos Zelaya continues to experience great pain and suffering in his mind and body.

**ANSWER:**    MSG denies the allegations contained in paragraph 42 of the Second Amended Complaint.

43.    As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were obliged to expend great sums of money for medical aid and attention.

**ANSWER:**    MSG denies the allegations contained in paragraph 43 of the Second Amended Complaint.

44.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were unable to attend to their usual pursuits and occupations and Carlos Zelaya will be unable to attend to his usual pursuits and occupation in the future.

**ANSWER:**     MSG denies the allegations contained in paragraph 44 of the Second Amended Complaint.

45.     On or about January 27, 2007, Jose Carlo Zelaya, died as a direct and proximate result of injuries sustained in the auto collision caused by Mr. Freibott.

**ANSWER:**     MSG admits that Jose Carlo Zelaya died on January 27, 2007, and denies all remaining allegations contained in paragraph 45 of the Second Amended Complaint.

46.     Jose Carlo Zelaya, was survived by his parents, Carlos Zelaya and Ruth Zelaya.

**ANSWER:**     MSG admits that Jose Carlo Zelaya was survived by his parents, Carlos Zelaya and Ruth Zelaya.

47.     As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos and Ruth Zelaya have suffered severe and permanent injuries, damages and losses including but not limited to economic damages, pecuniary losses, lost and future wage loses, loss of support, and loss of prospective inheritance.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 47 of the Second Amended Complaint and therefore denies all allegations.

48.     As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos and Ruth Zelaya have been deprived of future aid, assistance, services, financial support.

**ANSWER:**     MSG denies the allegations contained in paragraph 48 of the Second

Amended Complaint.

49.     As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos and

Ruth Zelaya have been caused to expend various sums to administer the estate Jose Carlo Zelaya

and have incurred other expenses for which they are entitled to recover.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the

allegations contained in paragraph 49 of the Second Amended Complaint and therefore denies

all allegations.

AD DAMNUM:  MSG denies that the Plaintiffs are entitled to any of the relief

demanded from MSG.

### COUNT II — MADISON SQUARE GARDEN
### VIOLATION OF THE NEW YORK DRAM SHOP ACT, G.O.L § 11-101
### AS TO CARLOS ZELAYA AS ADMINISTRATOR AD PROSEQUENDUM
### OF THE ESTATE OF JOSE CARLO ZELAYA

50.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

**ANSWER:**     MSG incorporates by reference its answers to paragraphs 1-49 of the Second

Amended Complaint.

51.     On or about January 23, 2007, Kevin Freibott was attending the Basketball Game

being held at The Garden.

**ANSWER:**     MSG admits that Kevin Freibott attended at least part of a basketball game

presented at MSG on January 23, 2007, and denies any remaining allegations contained in

paragraph 51 of the Second Amended Complaint and therefore denies all allegations.

52.     While Mr. Freibott was attending the Basketball Game, in violation of the New York State Dram Shop Act, G.O.L § 11-101, MSG unlawfully sold alcoholic beverages to Mr. Freibott by serving Mr. Freibott in a visibly intoxicated state.

**ANSWER:**     MSG denies all allegations contained in paragraph 52 of the Second Amended Complaint.

53.     In further violation of the New York State Dram Shop Act, G.O.L § 11-101, MSG unlawfully sold alcoholic beverages to Kevin Freibott while having failed to properly hire, train and supervise its servants, agents and/or employees to in order to prevent serving alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, consistent with the legal requirements promulgated by the State and City of New York, regulations set forth the by the NCAA, and MSG's own posted rules, regulations and guidelines for serving alcoholic beverages during events hosted at The Garden.

**ANSWER:**     MSG denies all allegations contained in paragraph 53 of the Second Amended Complaint.

54.     Having cause or contributed to Mr. Freibott's intoxication, MSG then permitting Mr. Freibott to exit The Garden and operate his motor vehicle while visibly intoxicated.

**ANSWER:**     MSG denies all allegations contained in paragraph 54 of the Second Amended Complaint.

55.     Upon exiting the Garden and operating his vehicle in a visibility intoxicated state possessing a blood alcohol level in excess of three times the legal limit, Mr. Freibott caused an auto collision on the Pulaski Skyway with another motor vehicle occupied by Carlos Zelaya, Ruth Zelaya & Jose Carlo Zelaya.

**ANSWER:**  MSG lacks knowledge or information sufficient to form a belief regarding the allegations in paragraph 55 of the Second Amended Complaint and therefore denies all allegations.

56.  On or about January 27, 2007, Jose Carlo Zelaya, died as a direct and proximate result of injuries sustained in the auto collision caused by Mr. Freibott.

**ANSWER:**  MSG admits that Jose Carlo Zelaya died on January 27, 2007, and denies all remaining allegations contained in paragraph 56 of the Second Amended Complaint.

57.  As a direct and proximate result of the auto collision caused by Mr. Friebott, Jose Carlo Zelaya was caused to suffer conscious pain and suffering and fear of impending death, was placed in apprehension of harmful and offensive bodily contact, suffered offensive and harmful bodily contact, suffered extreme fear, anxiety, emotional and psychological distress, loss of life's pleasures, loss of earnings and earning capacity, and was otherwise mentally and physically harmed.

**ANSWER:**  MSG denies the allegations contained in paragraph 57 of the Second Amended Complaint.

58.  Carlos Zelaya brings this claim on behalf of the decedent for the damages suffered by Jose Carlo Zelaya.

**ANSWER:**  Paragraph 58 of the Second Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG denies that it is liable for any damage suffered by Jose Carlo Zelaya, and denies any remaining factual allegations.

AD DAMNUM:  MSG denies that the Plaintiffs are entitled to any of the relief demanded from MSG.

## COUNT III — 247 W. 37TH STREET LLC LLC
## VIOLATION OF THE NEW YORK DRAM SHOP ACT, G.O.L § 11-101
## AS TO CARLOS ZELAYA AND RUTH ZELAYA INDIVIDUALLY

59.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

**ANSWER:**     MSG incorporates by reference its answers to paragraphs 1-58 in the Second Amended Complaint.

60.     On or about January 23, 2007, Kevin Freibott patronized Stitch Bar & Lounge prior to attending the Basketball Game at the Garden.

**ANSWER:**     MSG admits that Kevin Freibott visited Stitch Bar & Lounge on the evening of January 23, 2007, at a time prior to the start of the basketball game at Madison Square Garden between St. John's University and the University of Notre Dame.  MSG denies any remaining allegations contained in paragraph 60 of the Second Amended Complaint.

61.     While patronizing Stitch Bar & Lounge, in violation of the New York State Dram Shop Act, G.O.L § 11-101, 247 W. 37th Street LLC unlawfully sold alcoholic beverages to Mr. Freibott by serving Mr. Freibott in a visibly intoxicated state.

**ANSWER:**     MSG admits that Kevin Freibott was sold and consumed one or more alcoholic beverages at Stitch Bar & Lounge on January 23, 2007.  MSG denies the remaining allegations contained in paragraph 61 of the Second Amended Complaint.

62.     In further violation of the New York State Dram Shop Act, G.O.L § 11-101, 247 W. 37th Street LLC unlawfully sold alcoholic beverages to Kevin Freibott while having failed to

properly hire, train and supervise its servants, agents and/or employees to in order to prevent serving alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, consistent with the legal requirements promulgated by the State and City of New York and its own posted rules, regulations and guidelines for serving alcoholic beverages.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 62 of the Second Amended Complaint and therefore denies all allegations.

63.     Having caused or contributed to Mr. Freibott's intoxication, 247 W. 37th Street LLC then permitted Mr. Freibott to exit Stitch Bar & Lounge and operate his motor vehicle while visibly intoxicated.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 63 of the Second Amended Complaint and therefore denies all allegations.

64.     Upon departing from Stitch Bar & Lounge and operating his vehicle in a visibility intoxicated state possessing a blood alcohol level in excess of three times the legal limit, Mr. Freibott caused an auto collision on the Pulaski Skyway with another motor vehicle occupied by Carlos Zelaya, Ruth Zelaya & Jose Carlo Zelaya.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 64 of the Second Amended Complaint and therefore denies all allegations.

65.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya, were injured in and about their minds and bodies causing serious permanent personal injuries and emotional distress.

**ANSWER:**     MSG denies the allegations contained in paragraph 65 of the Second Amended Complaint.

66.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were caused great pain and suffering to their mind and body, and Carlos Zelaya continues to experience great pain and suffering in his mind and body.

**ANSWER:**     MSG denies the allegations contained in paragraph 66 of the Second Amended Complaint and therefore denies all allegations.

67.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were obliged to expend great sums of money for medical aid and attention.

**ANSWER:**     MSG denies the allegations contained in paragraph 67 of the Second Amended Complaint.

68.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Carlos Zelaya and Ruth Zelaya were unable to attend to their usual pursuits and occupations, and Carlos Zelaya will be unable to attend to his usual pursuits and occupation in the future.

**ANSWER:**     MSG denies the allegations contained in paragraph 68 of the Second Amended Complaint.

69.     On or about January 27, 2007, Jose Carlo Zelaya, died as a direct and proximate result of injuries sustained in the auto collision caused by Mr. Freibott.

**ANSWER:**   MSG admits that Jose Carlo Zelaya died on January 27, 2007.  MSG denies all remaining allegations contained in paragraph 69 of the Second Amended Complaint.

70.   Jose Carlo Zelaya, was survived by his parents, Carlos Zelaya and Ruth Zelaya.

**ANSWER:**   MSG admits that Jose Carlo Zelaya was survived by his parents, Carlos Zelaya and Ruth Zelaya.

71.   As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos and Ruth Zelaya have suffered severe and permanent injuries, damages and losses including but not limited to economic damages, pecuniary losses, lost and future wage losses, loss of support, loss of prospective inheritance.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 71 of the Second Amended Complaint and therefore denies all allegations.

72.   As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos and Ruth Zelaya have been deprived of future aid, assistance, services, financial support.

**ANSWER:**   MSG denies the allegations contained in paragraph 72 of the Second Amended Complaint.

73.   As a direct and proximate result of the death of Jose Carlo Zelaya, Carlos Zelaya has been caused to expend various sums to administer the estate Jose Carlo Zelaya and has incurred other expenses for which they are entitled to recover.

**ANSWER:**   MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 73 of the Second Amended Complaint and therefore denies all allegations.

AD DAMNUM:  MSG lacks knowledge or information sufficient to form a belief regarding what, if any, relief Plaintiffs are entitled to from 247 W. 37th Street LLC, but denies that Plaintiffs are entitled to any relief from MSG.

**COUNT IV — 247 W. 37th STREET LLC**
**VIOLATION OF THE NEW YORK DRAM SHOP ACT, G.O.L § 11-101**
**AS TO CARLOS ZELAYA AS ADMINISTRATOR AD PROSEQUENDUM**
**OF THE ESTATE OF JOSE CARLO ZELAYA**

74.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

**ANSWER:**     MSG incorporates by reference its answers to paragraphs 1-73 of the Second Amended Complaint.

75.     On or about January 23, 2007, Kevin Freibott patronized Stitch Bar & Lounge prior to attending the Basketball Game at the Garden.

**ANSWER:**     MSG admits that Kevin Freibott visited Stitch Bar & Lounge on the evening of January 23, 2007, and that he subsequently visited MSG while St. John's University was presenting a men's basketball game against the University of Notre Dame. MSG denies any remaining allegations contained in paragraph 19 of the Second Amended Complaint.

76.     While patronizing Stitch Bar & Lounge, in violation of the New York State Dram Shop Act, G.O.L § 11-101, 247 W. 37th Street LLC unlawfully sold alcoholic beverages to Mr. Freibott by serving Mr. Freibott in a visibly intoxicated state.

**ANSWER:**     MSG admits that Kevin Freibott was sold and consumed one or more alcoholic beverages at Stitch Bar & Lounge on January 23, 2007.  MSG denies all remaining allegations contained in paragraph 76 of the Second Amended Complaint.

77.     In further violation of the New York State Dram Shop Act, G.O.L § 11-101, 247 W. 37th Street LLC unlawfully sold alcoholic beverages to Kevin Freibott while having failed to properly hire, train and supervise its servants, agents and/or employees to in order to prevent serving alcoholic beverages to visibly intoxicated patrons, including Kevin Freibott, consistent with the legal requirements promulgated by the State and City of New York and its own posted rules, regulations and guidelines for serving alcoholic beverages.

**ANSWER:**     MSG denies the allegations contained in paragraph 77 of the Second Amended Complaint.

78.     Having caused or contributed to Mr. Freibott's intoxication, 247 W. 37th Street LLC then permitted Mr. Freibott to exit Stitch Bar & Lounge and operate his motor vehicle while visibly intoxicated.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 78 of the Second Amended Complaint and therefore denies all allegations.

79.     Upon departing from Stitch Bar & Lounge and operating his vehicle in a visibility intoxicated state possessing a blood alcohol level in excess of three times the legal limit, Mr. Freibott caused an auto collision on the Pulaski Skyway with another motor vehicle occupied by Carlos Zelaya, Ruth Zelaya & Jose Carlo Zelaya.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 79 of the Second Amended Complaint and therefore denies all allegations.

80.     On or about January 27, 2007, Jose Carlo Zelaya, died as a direct and proximate result of injuries sustained in the auto collision caused by Mr. Freibott.

**ANSWER:**     MSG admits that Jose Carlo Zelaya died on January 27, 2007.  MSG denies all remaining allegations contained in paragraph 80 of the Second Amended Complaint.

81.     As a direct and proximate result of the auto collision caused by Mr. Friebott, Jose Carlo Zelaya was caused to suffer conscious pain and suffering and fear of impending death, was placed in apprehension of harmful and offensive bodily contact, suffered offensive and harmful bodily contact, suffered extreme fear, anxiety, emotional and psychological distress, loss of life's pleasures, loss of earnings and earning capacity, and was otherwise mentally and physically harmed.

**ANSWER:**     MSG denies the allegations contained in paragraph 81 of the Second Amended Complaint.

82.     Carlos Zelaya brings this claim on behalf of the decedent for the damages suffered by Jose Carlo Zelaya.

**ANSWER:**     Paragraph 82 states a legal conclusion for which no response is required, but if a response were required, MSG denies that it is liable for any damage suffered by Jose Carlo Zelaya, and denies all remaining factual allegations.

AD DAMNUM:   MSG lacks knowledge or information sufficient to form a belief regarding what, if any, relief Plaintiffs are entitled to from 247 W. 37th Street LLC, but denies that Plaintiffs are entitled to any relief from MSG.

## COUNT V – KEVIN FREIBOTT
## NEGLIGENCE
## <u>AS TO RUTH ZELAYA</u>

83.     Plaintiff repeats and realleges the foregoing paragraphs as if set forth fully herein.

**<u>ANSWER:</u>**     MSG incorporates by reference herein its answers to paragraphs 1-82 of the

Second Amended Complaint.

84.     Kevin Freibott was the owner and operator of the motor vehicle registered and

licensed in the State of New Jersey bearing the license plate No. NRX-63X.

**<u>ANSWER:</u>**     MSG lacks knowledge or information sufficient to form a belief regarding the

allegations contained in paragraph 84 of the Amended Complaint and therefore denies all

allegations.

85.     Mr. Freibott as the operator of a motor vehicle has a legal duty to operate the

vehicle in a reasonably safe manner.

**<u>ANSWER:</u>**     Paragraph 85 of the Second Amended Complaint states a legal conclusion for

which no response is required, but if a response were required, MSG lacks knowledge or

information sufficient to form a belief regarding the factual allegations contained in paragraph

85 of the Second Amended Complaint and therefore denies all allegations.

86.     Mr. Freibott as the operator of a motor vehicle further has a legal duty to operate

the vehicle free of the influence of any drugs or alcohol.

**<u>ANSWER:</u>**     Paragraph 86 of the Second Amended Complaint states a legal conclusion

for which no response is required, but if a response were required, MSG lacks knowledge

or information sufficient to form a belief regarding the factual allegations contained in

paragraph 86 of the Amended Complaint and therefore denies all allegations.

87.     On or about January 23, 2007, Mr. Freibott was operating his motor vehicle while visibly intoxicated with a blood alcohol level in excess of three times the legal limit.

**ANSWER:**     Paragraph 87 of the Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG lacks knowledge or information sufficient to form a belief regarding the factual allegations contained in paragraph 87 of the Second Amended Complaint and therefore denies all allegations.

88.     While operating his motor vehicle in this condition under the influence of alcohol on the Pulaski Skyway, Mr. Freibott recklessly and/or negligently struck the rear of the motor vehicle in which Carlos Zelaya, Ruth Zelaya and Jose Carlo Zelaya were traveling as passengers.

**ANSWER:**     MSG denies the allegations contained in paragraph 88 of the Second Amended Complaint.

89.     As a direct and proximate result of Mr. Freibott's negligence, Ruth Zelaya was injured in the auto collision caused by Mr. Freibott on the Pulaski Skyway while he was operating his motor vehicle with a blood alcohol level in excess of three times the legal limit.

**ANSWER:**     Paragraph 89 of the Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG denies the factual allegations contained in paragraph 89 of the Amended Complaint.

90.     As a direct and proximate result of Mr. Freibott's negligence, Ruth Zelaya was injured in and about her mind and body causing serious permanent personal injuries and emotional distress.

**ANSWER:**     MSG denies the allegations contained in paragraph 90 of the Second Amended Complaint.

91.     Ruth Zelaya was caused great pain and suffering to her mind and body.

**ANSWER:**     MSG denies the allegations contained in paragraph 91 of the Second Amended Complaint and therefore denies all allegations.

92.     Ruth Zelaya was obliged to expend great sums of money for medical aid and attention.

**ANSWER:**     MSG lacks knowledge or information sufficient to form a belief regarding the allegations contained in paragraph 92 of the Second Amended Complaint and therefore denies all allegations.

93.     Ruth Zelaya was unable to attend to her usual pursuits and occupations.

**ANSWER:**     MSG admits that Ruth Zelaya became unable to attend to her usual pursuits and occupations, but denies any remaining allegations contained in paragraph 93 of the Second Amended Complaint.

AD DAMNUM:  MSG denies that Plaintiffs are entitled to any relief from Kevin Freibott or from MSG.

### COUNT VI – ALL DEFENDANTS FOR SURVIVORSHIP ACTION ON BEHALF OF THE ESTATE OF RUTH ZELAYA

94.  Plaintiff repeats, reiterates and re-alleges the foregoing paragraphs as if set forth fully herein.

**ANSWER:**     MSG incorporates by reference herein its answers to paragraphs 1-93 of the Second Amended Complaint.

95.  That by reason of the aforesaid, deceased plaintiff Ruth Zelaya was caused to sustain serious, severe grave, painful personal injuries resulting in her death and was caused to be rendered sick, sore, lame and disabled; was caused to suffer great pain and anguish, sustained a

severe shock to her nervous system; all of the aforesaid injuries were attended with great pain, suffering, and discomfort prior to her death.

**ANSWER:**     MSG admits that Ruth Zelaya sustained personal injuries and that she is deceased. MSG denies all remaining allegations contained in paragraph 95 of the Second Amended Complaint.

96.  That by reason of the aforesaid, Plaintiff Decedent, Ruth Zelaya was caused to sustain severe and serious personal injuries prior to her death as defined by Section 5102(d) of the Insurance Law and/or greater than economic loss as defined in Section 5102(a) of the Insurance Law.

**ANSWER:**     Paragraph 96 of the Second Amended Complaint states legal conclusions for which no response is required, but if a response were required, MSG admits that Ruth Zelaya sustained personal injuries and that she is deceased.  MSG denies all remaining factual allegations contained in paragraph 96 of the Second Amended Complaint.

97.  That by reason of the foregoing, the Estate of plaintiff decedent, Ruth Zelaya, has sustained damages that are compensable under New York E.P.T.L. §11-3.2, et seq. and the New Jersey Survivors, N.J.S.A. 2A:15-3, et seq.

**ANSWER:**     Paragraph 97 of the Second Amended Complaint states a legal conclusion for which no response is required, but if a response were required, MSG denies that the Estate of Ruth Zelaya has sustained damages that are compensable by MSG under any statute or legal theory.  MSG denies any remaining factual allegations contained in paragraph 97 of the Second Amended Complaint.

AD DAMNUM:  MSG denies that Plaintiffs are entitled to any relief from MSG or any other Defendant.

## AFFIRMATIVE DEFENSES

Defendant Madison Square Garden asserts the following affirmative defenses to each and every cause of action averred by Plaintiffs.

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Complaint is barred by the applicable statute of limitations and the doctrine of laches.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' and/or Decedents' injuries, in whole, or in part, were the result of the negligence of third parties over whom MSG had no control.

### FOURTH AFFIRMATIVE DEFENSE

The negligent acts or omissions of individuals or entities other than MSG constituted intervening, superseding acts of negligence.

### FIFTH AFFIRMATIVE DEFENSE

MSG's conduct was not a substantial factor in causing Plaintiffs' and/or Decedents' damages, if any.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims against MSG are mitigated by Plaintiffs' and/or Decedents' own comparative negligence.

## SEVENTH AFFIRMATIVE DEFENSE

The negligence of Plaintiffs and/or Decedents contributed to Plaintiffs' and/or Decedents' damages, if any, as Plaintiffs and/or Decedents failed to exercise ordinary care for their own safety at the time the alleged injuries occurred.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to join necessary and/or indispensable parties to this action.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs and/or Decedents failed to use appropriate restraint systems, including but not limited to, infant car seats, seat belts, lap belts, and/or harness devices, at the time of the occurrence of the alleged injuries, and this failure caused or contributed to the claimed injuries or damages alleged by Plaintiffs.

## TENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs or the Decedents have suffered damage, Plaintiffs failed to mitigate such damages.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs or the Decedents have suffered damage, such damages were the result of Plaintiffs' and/or Decedents' own negligence, carelessness, recklessness, and/or assumption of the risk.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs receive an award, then the economic loss element encompassed in such award must be reduced by the portion that was or will be replaced from a collateral source.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs receive an award, such award must be reduced to each Defendant's individual equitable share.

## FOURTEENTH AFFIRMATIVE DEFENSE

MSG adopts and incorporates by reference any affirmative defenses asserted by any other Defendant to this action, to the extent such affirmative defenses apply to MSG, and reserves the right to assert any other defense that may become available or appear during discovery proceedings or otherwise in this case.

## <u>CROSS-CLAIMS AGAINST CO-DEFENDANTS 247 WEST 37TH STREET, LLC AND KEVIN FREIBOTT</u>

If Plaintiffs and/or Decedents sustained the damages in the time and place and in the manner alleged in Plaintiffs' Second Amended Complaint, all of which have been specifically denied by this Defendant, then such damages were caused or contributed to by the negligence and carelessness of the co-Defendants; and in the event any judgment is recovered herein against the answering Defendants, then the co-Defendants are obliged to reimburse MSG for such portion of the judgment that is attributable to the conduct of the co-Defendants.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Defendant MSG requests that the Court dismiss this action with prejudice, award MSG costs and attorneys' fees, and grant such further relief in favor of Defendant MSG as it deems proper.

ALTERNATIVELY, Defendant MSG requests that the Court determine the rights of Plaintiffs and Defendants with regard to all claims and cross-claims and that Defendant MSG be

awarded judgment over the co-Defendants for contribution in the proportion of their culpable

conduct, together with the costs of this litigation.


Dated: July 30, 2010                           Respectfully submitted,

                                                  s/ Nathanael S. Kelley
                                               _____
Bobby R. Burchfield (*pro hac vice*)           Nathanael S. Kelley
Richard W. Smith (*pro hac vice*)              MCDERMOTT WILL & EMERY LLP
MCDERMOTT WILL & EMERY LLP                     340 Madison Avenue
600 Thirteenth Street, N.W.                    New York, NY 10173-1922
Washington, DC 20005-3096                      T: 212.547.5000
T: 202.756.8000                                F: 212.547.5444
F: 202.756.8087                                nkelley@mwe.com

                                               *Attorneys for Defendant*
                                               *Madison Square Garden, L.P.*